## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA

|  |  |  |
|---|---|---|
| **VEROMONIQUE NTSEFUL-DUBOSE**, individually and on behalf of all others similarly situated, | : : : : | Case No: |
|  | : | Hon. |
| Plaintiff, | : : | Mag. |
| v. | : : |  |
| **SPECTRAFORCE TECHNOLOGIES, INC.**, | : : : |  |
| Defendant. | : : |  |

## COLLECTIVE AND CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiff, Veromonique Ntseful-Dubose ("Plaintiff"), by and through her attorneys, hereby brings this Collective and Class Action Complaint against Defendant, Spectraforce Technologies, Inc. ("Defendant"), and states as follows:

## INTRODUCTION

1.      This is a collective and class action complaint brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiff, individually and on behalf of all similarly situated persons employed by Defendant, arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* and common law.

2.      Defendant is in the business of staffing and workforce-solutions services and describes itself as "the force that unites talent with opportunity, strategy with impact, challenges with solutions."[1] Spectraforce provides "flexible staffing for any demand, any timeline," and states that, "From temporary hires to permanent placements, we connect you with qualified talent ready

---

[1]  *See* https://spectraforce.com/about-spectraforce/ (last visited October 10, 2025).

to deliver."[2]

3.      In providing the aforementioned services, Defendant employed hourly call center employees with job titles that include, but are not limited to, Patient Access Representative, Customer Service Representative, Customer Service Advocate, Web Chat Representative and Enrollment Representative (collectively referred to "Representatives") in brick-in-mortar call centers and in remote call center settings across the United States. Defendant heavily relies on Representatives to, among other things, receive and respond to clients' customer service calls, troubleshoot inquiries, requests, and complaints, and log information about customer service interactions into Defendant's clients' systems.

4.      Defendant classified its Representatives as non-exempt and tasked them with the primary job duty of providing over-the-phone and electronic customer service.

5.      Regardless of specific job title, all of Defendant's Representatives were: paid on an hourly basis; classified as non-exempt; regularly worked forty (40) or more hours per workweek; relied on a computer and essential computer programs to perform their job duties daily; required to perform work off-the-clock before, during and after their scheduled shifts when they were not logged into Defendant's timekeeping system; and subject to the same relevant policies.

6.      The United States Department of Labor ("DOL") recognizes that call center jobs, like those held by Defendant's Representatives, are homogenous; in July 2008, the DOL issued Fact Sheet #64 to alert call center employees to some of the abuses that are prevalent in the industry.[3]

7.      One of those abuses, which is at issue in this case is the employer's refusal to pay

---

[2] *See* https://spectraforce.com/services/ (last visited October 10, 2025).
[3] *See* DOL Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA), https://www.dol.gov/agencies/whd/fact-sheets/64-flsa-call-centers (last visited Jan. 13, 2026).

for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id*.

8. More specifically, DOL Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." *Id*. Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job related activities, must be kept." *Id*.

9. Defendant requires its Representatives to work a full-time schedule, plus overtime, however Defendant does not compensate Representatives for all work performed. Instead, Defendant requires its Representatives to perform compensable work tasks before and after their scheduled shifts, but train and instruct its Representatives not to record this time on their timesheets in Defendant's timekeeping system. This timekeeping policy resulted in Representatives not being paid for all overtime hours worked, overtime gap time when associated with unpaid overtime, and in non-overtime workweeks for straight time.

10. In addition to this pre- and post-shift work, Defendant also required its Representatives to perform mid-shift work during their unpaid meal periods. The Representatives' duties performed during their unpaid meal periods included similar login procedures. 29 C.F.R. § 785.19(a).

11. More specifically, Defendant failed to compensate its Representatives for the substantial time they spent turning on, booting up, and updating their computer and computer systems ***prior*** to recording their time in Defendant's timekeeping system and shutting down their programs/applications that they used during their scheduled shift ***after*** recording their time, and

before and after their unpaid meal periods.

12.     Plaintiff seeks a declaration that her rights, and the rights of the putative Collective and Class members, were violated, a judgment awarding her unpaid back wages, liquidated damages, attorneys' fees and costs to make her and the putative Collective and Class whole for damages they suffered, and any other remedies to which she is entitled, and to help ensure Defendant will not subject future workers to the same illegal conduct in the future.

13.     At the earliest time possible, Plaintiff will request a Court-authorized notice of this action pursuant to 29 U.S.C. § 216(b) to all similarly situated employees who worked for Defendant at any time in the past three years.

## JURISDICTION AND VENUE

14.     This Court has subject-matter jurisdiction over Plaintiff's FLSA claim, pursuant to 28 U.S.C. § 1331, because Plaintiff's claim raises a federal question under 29 U.S.C. § 201, *et seq*.

15.     Additionally, this Court has jurisdiction over Plaintiff's FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer…in any Federal or State court of competent jurisdiction."

16.     Defendant's annual sales exceed $500,000, and Defendant employs more than two individuals; thus, the FLSA applies in this case on an enterprise basis. Defendant's Representatives engage in interstate commerce and therefore they are also covered by the FLSA on an individual basis.

17.     This Court also has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367 because they originate from the same facts that form the basis of her federal claims.

18.     This Court has personal jurisdiction over Defendant because it conducts business

4

within the state of North Carolina, maintains its principal place of business in the state of North Carolina, is registered with the North Carolina Secretary of State, and employs individuals within the state of North Carolina and throughout the United States.

19.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant employs Representatives in this District, conducts business in this District, and a substantial portion of the events that give rise to the Plaintiff's claims occurred in this District.

**PARTIES**

20.     Plaintiff Veromonique Ntseful-Dubose is a resident of Mobile, Alabama and worked remotely for Defendant as a non-exempt Patient Scheduler from approximately October 2023 to February 2024. Defendant compensated Plaintiff through the payment of an hourly rate, most recently $18.00 per hour. Plaintiff signed a consent to join this collective action, which is attached as **Exhibit A**.

21.     Additional putative collective members were or are employed by Defendant as Representatives during the past three (3) years and their consent to join forms will also be filed in this case.

22.     Defendant Spectraforce Technologies, Inc. is a corporation whose incorporated in the state of North Carolina (Secretary of State ID No. 0557273), with a principal place of business in Raleigh, North Carolina.  Defendant maintains a registered agent for service of process listed as Amit Sing, 500 West Peace Street, Suite 101, Raleigh, North Carolina, 27603.

**GENERAL ALLEGATIONS**

23.     Prior to hiring prospective Representatives, Defendant provided them with a written offer setting forth the job title, the offered rate of pay, and the conditions of their employment.

5

24.     Defendant maintains documents demonstrating the promised hourly wage for each Representative, including but not limited to: offer letters, paystubs, and/or payroll records.

25.     Plaintiff received an offer letter from Defendant to work as a Representative, and she accepted Defendant's offer with the understanding that her base hourly rate would be paid for all hours worked.

26.     Plaintiff performed under her agreement with Defendant carrying out her job duties and responsibilities. More specifically, Plaintiff fielded inbound calls from and made outbound calls to Defendant's clients and its clients' customers; provided customer care support; handled and resolved escalated customer inquiries, issues, and complaints and offered appropriate solutions to the same; and maintained records of customer interactions. Plaintiff utilized Defendant's applications and systems to track all events and customer service information. Plaintiff additionally performed the required unpaid off-the-clock work explained below.

27.     Defendant paid its Representatives at varying hourly rates.

28.     Defendant's Representatives typically worked five (5) days each week and up to, and on occasion more than, forty (40) hours per week.

29.     There were one or more instances during Plaintiff's employment when she worked forty (40) hours or more in a workweek.

30.     Upon information and belief, Defendant utilized a centralized payroll system which calculated overtime pay for all similarly situated employees in the same or similar manner.

31.     Defendant provided training to Representatives on, *inter alia*, how to carry out their day-to-day job duties, how to track their time, how to load and log into their computer programs at the beginning of the day, and how log out at the end of each day; attendance, schedule, and call quality expectations; and Defendant's policies. The training that all of Defendant's

6

Representatives received was substantially, if not entirely, the same, and Defendant's Representatives including Plaintiff, were subject to the same relevant policies and procedures.

32.     At all relevant times, Defendant controlled Plaintiff's and all other Representatives' work schedules, duties, protocols, applications, assignments, and employment conditions.

33.     To the extent that Defendant may have had written policies that required its employees to be paid for all hours worked, including overtime, the reality is that Defendant did not follow these policies, which resulted in Representatives, like Plaintiff, not being paid for all hours worked, including the off-the-clock work described herein.

34.     Defendant required Plaintiff and all other Representatives to use a computer and a variety of essential and indispensable computer programs, applications, and servers in order to perform their job duties.

35.     Defendant instructed Plaintiff and all other similarly situated Representatives to be "call ready" the moment their scheduled shift started. This required Defendant's Representatives to log into and load all of their essential work-related computer programs and applications prior to the start of their shifts so they could be prepared to take calls the moment their shift began.

36.     Defendant enforced its "call ready" policy and required its Representatives to perform off-the-clock through its uniform attendance, compensation, timekeeping, and schedule adherence procedures; and the call quality assurance system it used.

37.     Defendant additionally maintained schedule adherence and attendance metrics pursuant to which it monitored the Representatives' "call ready" times in relation to their start of shift times, as well as the time the Representatives recorded on their timesheets. Defendant enforced these policies and procedures by routinely evaluating, and at times disciplining, the Representatives. This discipline included, but was not limited to verbal and written warnings, and

termination.

38.     Defendant's Representatives also performed off-the-clock work during their unpaid 30-minute meal period, for example undergoing some or all of the computer boot-up process mentioned above.

39.     Thus, Defendant forced its Representatives to perform some, if not all, of the boot-up and login process before the start of their shift and upon returning from their meal periods before they were allowed to clock in.

40.     All of Defendant's Representatives used the same or similar computer networks, software programs, and applications in the course of performing their job responsibilities. These programs and applications were an integral and indispensable part of the Representatives' work, and they could not perform their jobs without them.

41.     Similarly, Defendant's Representatives, including Plaintiff, performed work off-the-clock after their scheduled shift, when they shut-down/logged out of the programs and applications that they utilized during their shifts.

42.     At all relevant times, Defendant used its attendance and adherence policies against Plaintiff and its Representatives in order to require them to perform pre-, mid-, and post-shift work off-the-clock.

43.     As mentioned above, Defendant required its Representatives to record their hours worked during each shift in their timekeeping system, but prohibited them from recording time spent performing pre- and post-shift work tasks.  Failing to accurately account for and pay for all of the time actually worked by employees is a clear violation of the FLSA's record keeping requirements. See 29 U.S.C. § 211(c).

44.     The pre-, mid-, post-shift off-the-clock time Plaintiff and all other Representatives

8

spent booting up/logging into and shutting down their computers and applications and programs directly benefited Defendant and was integral and indispensable to the Representatives' job responsibilities.

45.     As a result of the off-the-clock work described herein, Plaintiff and all other Representatives were unlawfully deprived of approximately twenty (20) to thirty-one (31) minutes of compensation every shift.

46.     At all relevant times, Defendant was able to track the amount of time Plaintiff and other Representatives spent in connection with the pre-, mid-, and post-shift activities; however, Defendant failed to do so and failed to compensate Plaintiff and all other Representatives for the off-the-clock work they performed thus breaching its contracts with its Representatives.

47.     Indeed, in light of the explicit and long-standing DOL guidance cited above, there is no conceivable way for Defendant to establish that it acted in good faith.

48.     Despite knowing Plaintiff and all other Representatives performed this pre-, mid-, and post-shift work, Defendant and its managers failed to make any effort to stop or disallow it and instead suffered and permitted it to happen.

49.     Defendant possesses, controls, and/or has access to information and electronic data indicating the times Plaintiff and all other Representatives booted up and logged in to their computers each shift, along with the time they entered into the timekeeping system.

50.     Because Defendant required its Representatives, including Plaintiff, to perform pre-, mid-, and post-shift work off-the-clock, the hours tracked in Defendant's timekeeping system are inaccurate representations of the total amount of time Representatives spent working for Defendant. Thus, the hours reflected on the Representatives' paystubs are also inaccurate representations of the hours they actually worked.

A. **Pre-Shift Off-the-Clock Work**

51.     The off-the-clock pre-shift process took substantial time on a daily basis, approximately ten (10) minutes to fifteen (15) minutes per shift. Specifically, before each shift, Representatives were required to undertake essential work tasks such as: turning on their computer; waiting for the computer to boot up; logging in to their computer with a username and password; connecting to Defendant's virtual private network ("VPN") using a dual authentication process through which Representatives received a push notification on their cell phones and confirmed their identity; logging into and opening various programs and applications that were integral and indispensable to their job duties as Representatives (for example, Spectraforce system, phone system, Notepad, Teams, and company templates); visiting and logging into Defendant's Fieldglass timekeeping program on the internet and manually logging their start times.

52.     Defendant's Representatives had to complete much, if not all, of this process before the start of their scheduled shifts and before fielding calls. Consequently, the Representatives had to arrive to work at least ten (10) minutes to fifteen (15) minutes before their scheduled shifts to complete their above-described start-up and log-in activities.

53.     Defendant's Representatives were not compensated for all of or some of this time because, among other things, Defendant: (1) required Representatives to be "call ready" by the start of their scheduled shift; and (2) prohibited Representatives from logging into the system more than a finite number of minutes before the start of their scheduled shifts and the boot-up process took longer than that to perform each shift.

54.     The pre-shift off-the-clock work Representatives performed directly benefited Defendant and was integral and indispensable to their job duties and responsibilities as Representatives.

55.     Thus, in workweeks where Defendant's Representatives worked forty (40) hours or more, or close enough to forty (40) hours to have worked over forty (40) hours when considering the uncompensated off-the-clock work time discussed herein, Defendant violated the FLSA by failing to: (1) pay them the federally mandated overtime compensation for all work performed; (2) pay them straight time for all regular hours worked up to forty (40); and (3) record all of the time that its Representatives, including Plaintiff, worked for Defendant's benefit.

56.     If Representatives started logging in immediately prior to their scheduled shifts, they were in danger of clocking in late because they could not complete the required pre-shift work necessary to be "call ready" when their scheduled shifts began and it was time to clock in, and they would therefore receive a tardy on their records and poor schedule adherence scores.

57.     Because Defendant's Representatives typically worked scheduled shifts of at least forty (40) hours per week, their required pre-shift work was nearly always overtime work, compensable at 1.5 time their regular rate of pay.

58.     Defendant had express and constructive knowledge that its Representatives began the pre-shift boot-up and login process while off-the-clock in order to make sure they were "call ready" at the start of their shift time.

59.     Defendant's policies and practices discouraged its Representatives from recording all time worked.

**B.**     **Mid-Shift Off-the-Clock Work**

60.     Defendant promised its Representatives a scheduled 30-minute unpaid meal period during each work shift.

61.     Under federal law, in order to deduct an unpaid meal period from an employee's compensable time, an employee must be completely relieved of his or her employment duties for

the entire meal period. C.F.R. § 785.19(a) states:

> **Bona fide meal periods.** Bona fide meal periods are not work time. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be <u>completely relieved</u> from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating. (emphasis added).

62.     According to the U.S. Department of Labor, "[r]est periods of short duration, usually 20 minutes or less, are common in the industry (and promote employee efficiency), and must be counted as hours worked. Bona fide meal periods (typically 30 minutes or more) generally need not be compensated as work time as long as the employee is relieved from duty for the purpose of eating a regular meal." (*See* DOL Fact Sheet #64 cited herein at fn. 2).

63.     Instead of complying with the law, Defendant failed to provide its Representatives with legitimate bona fide meal periods because it required the Representatives to return to their computer stations before the end of their unpaid meal periods to unlock and log back into their computer and programs/applications and place themselves in a "ready" state so they could resume taking/making calls/emails the moment their meal periods concluded.

64.     The off-the-clock mid-shift process took substantial time, approximately five (5) to six (6) minutes per shift. The process was similar, albeit truncated, to the pre-shift login process described herein and this time went uncompensated.

65.     Because Defendant's Representatives typically work scheduled shifts of at least forty (40) hours per week, their required mid-shift work was nearly always overtime work compensable at 1.5 times their regular rate of pay.

66.     The unpaid off-the-clock work Plaintiff and other Representatives perform during

their meal periods and prior to logging back into Defendant's system is compensable, directly benefits Defendant and the tasks undertaken in connection with the off-the-clock work are integral and indispensable to their job duties and responsibilities as Representatives.

67. Defendant's management was aware that Plaintiff and other Representatives performed this off-the-clock work but permitted and even rewarded it through Defendant's schedule adherence metrics.

### C. Post-Shift Off-the-Clock Work

68. Pursuant to Defendant's policies, training, and direction, Plaintiff and all other Representatives were required to clock out the moment their scheduled shift ended and ***before*** completing call documentation, checking and responding to emails, closing the programs and applications they used during their scheduled shift, and shutting down their system.

69. This resulted in Plaintiff and other Representatives performing five (5) to ten (10) minutes of off-the-clock work every shift.

70. Thus, in workweeks where Defendant's Representatives worked forty (40) hours or more, or close enough to forty (40) hours to have worked over forty (40) hours when considering the uncompensated off-the-clock work time discussed herein, Defendant violated the FLSA by failing to: (1) pay them the federally mandated overtime compensation for all work performed; (2) pay them straight time for all regular hours worked up to forty (40); and (3) record all of the time that its Representatives, including Plaintiff, worked for Defendant's benefit.

71. The post-shift off-the-clock work Plaintiff and other Representatives performed was compensable, directly benefited Defendant and the tasks undertaken in connection with the off-the-clock work were integral and indispensable to the Representatives' job duties and responsibilities.

**D.** **Defendant Breached Valid and Binding Agreements with Plaintiff and All Other Representatives**

72.     Throughout Plaintiff's entire employment with Defendant, Defendant repeatedly and systematically breached its contract with Plaintiff by not paying Plaintiff for all hours worked.

73.     Defendant's failure to pay Plaintiff for each hour of work performed and that was required of them as a Representative was a material breach by Defendant.

74.     As a result of Defendant's breaches Plaintiff and the Representatives were deprived of wages owed to them under the agreements.

75.     Defendant's contractual promises to pay Plaintiff and each Representatives' applicable hourly rate for each hour worked and 1.5 times their applicable hourly rate for all overtime worked is evidenced by, among other things, each earnings statement issued to Plaintiff the Representatives.

76.     Plaintiff and all other Representatives are owed wages at their applicable hourly rate for the time that they worked off-the-clock during their employment with Defendant, including overtime wages.

77.     Plaintiff and all other Representatives earned these wages the moment they performed the off-the-clock work, and the wages were due to be paid to Plaintiff and all other Representatives no later than the pay day for the period in which the off-the-clock work was performed.

78.     Despite the fact that Plaintiff and all other Representatives performed off-the-clock work pre-, mid-, and post-shift these off-the-clock hours were not peripheral tasks for which they were not owed compensation.  Instead, the off-the-clock hours, which were performed by Plaintiff, and all other Representatives pursuant to not only their agreements with Defendant, but Defendant's verbal and/or written policies, training and direction, constituted principal work

activities that were integral and indispensable to their work, and Defendant was contractually obligated to compensate its Representatives for their hours worked at their applicable regular and overtime hourly rates at which they were employed.

79. Defendant was contractually obligated to compensate Plaintiff and all other Representatives their applicable hourly rates of pay for *all hours worked*.

### E. The Off-the-Clock Work Results in Viable "Gap Time" Claims

80. "Gap time claims are those "in which an employee has not worked 40 hours in a given week but seeks recovery of unpaid time worked, or in which an employee has worked over 40 hours in a given week but seeks recovery for unpaid work under 40 hours." *Kinkead v. Humana at Home, Inc*., 450 F.Supp.3d 162, 182 (D. Conn. Mar. 31, 2020); *see also Conner v. Cleveland Cty.*, *N.C.*, 22 F.4th 412, 426 (4th Cir. 2022) ("we hold that overtime gap time claims are cognizable under the FLSA").

81. Plaintiff and similarly situated Representatives regularly worked non-overtime hours (i.e., "gap time") for which they were not paid.

82. During the weeks that Representatives did not work over forty (40) hours in a workweek, the outcome of Defendant's policies and practices was a deprivation of straight-time wages, in breach of Defendant's contracts with its Representatives.

### F. Defendant Benefited from the Representatives' Off-the-Clock Work

83. At all relevant times, Defendant has required and directly benefitted from the off-the clock work performed by Plaintiff and all other Representatives in connection with the pre-, mid-, and post-shift activities described above.

84. At all relevant times, Defendant controlled the work schedules, duties, protocols, applications, assignments, and employment conditions of Plaintiff and all other Representatives.

85.     At all relevant times, Defendant has been able to track the amount of time Plaintiff and all other Representatives spend in connection with the pre-, mid-, and post-shift activities; however, Defendant failed to do so and failed to compensate Plaintiff and all other Representatives for the off-the-clock work they performed.

86.     At all relevant times, Plaintiff and all other Representatives were non-exempt hourly employees, subject to the FLSA's requirements.

87.     At all relevant times, Defendant used its attendance and adherence policies against Plaintiff and the other Representatives in order to pressure them into performing pre-, mid-, and post-shift work off-the-clock.

88.     Defendant expressly trained and instructed Plaintiff and all other Representatives to perform these off-the-clock work activities outside (before or after) the start and end times they record in timekeeping system.

89.     Defendant instructed Representatives to have all of their work applications and systems fully loaded before the start of their scheduled shifts, which took them approximately ten (10) to fifteen (15) minutes per shift, while prohibiting Representatives from clocking into the timekeeping system before the scheduled shift and simultaneously requiring them to be "call ready" the moment their shifts. Additionally, Plaintiff and all similarly situated Representatives had to return from their unpaid meal period early in order to have all work applications and systems fully loaded before resuming their shifts, which takes them in the range of five (5) to six (6) minutes per day.

90.     At all relevant times, Defendant's policies and practices deprived Plaintiff and the Representatives of wages owed for the pre-, mid-, and post-shift activities they performed.

91.     During the weeks that Representatives worked over forty (40) hours in a workweek,

16

the outcome of Defendant's policies and practices was a deprivation of overtime wages, which are compensable under the FLSA.

92.     Defendant is in possession of the payroll and timekeeping records that will illustrate exactly which workweeks Plaintiff worked over forty (40) hours and exactly which weeks she worked under forty (40) hours.

93.     Defendant has known or should have known that the time spent by Plaintiff and other Representatives in connection with pre-, mid-, and post-shift activities is compensable under the law. Indeed, in light of the explicit DOL guidance cited above, there is no conceivable way for Defendant to establish that they acted in good faith by not compensating the Representatives for the time at issue in this action.

94.     Despite knowing Representatives performed off-the-clock work before, during and after their shifts, Defendant failed to make any effort to stop or disallow the off-the-clock work and instead suffered or permitted it to happen.

95.     Unpaid wages related to the off-the-clock work described herein are owed to Plaintiff at the FLSA-mandated overtime premium of one and one-half the Plaintiff' regular hourly rate because Plaintiff worked in excess of forty (40) hours in a workweek.

**G.     Plaintiff's Exemplary Workweek**

96.     Defendant paid its Representatives on a weekly basis. The FLSA and regular wage violations discussed herein occurred throughout Plaintiff's employment with Defendant; however, as an example of one pay period where Defendant failed to pay Plaintiff regular wages for work performed and overtime for hours worked in excess of forty (40) hours (as mandated by the FLSA), Plaintiff provides her paystub for the pay period of January 28, 2024 – February 3, 2024:

- Plaintiff worked 40 hours in the workweek at a rate of $17.00 per hour and upon information and belief was paid $17.00 for each regular hour worked.

- With unpaid pre-, mid-, and post-shift time, in the range of twenty (20) to thirty-one (31) minutes per shift, Plaintiff should have been paid an additional one hundred (100) to one hundred fifty-five (155) minutes at her overtime rate of $25.50 during the pay period.

(**Exhbit B**, NtsefulDubose Paystub).

## FLSA COLLECTIVE ACTION ALLEGATIONS

97.     Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on behalf of herself and on behalf of:

> *All current and former similarly situated Representatives who work or have worked for Defendant at any time in the past three years*

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition if necessary.

98.     Excluded from the proposed FLSA Collective are Defendant's executives, administrative and professional employees, including computer professionals and outside salespersons.

99.     Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and others similarly situated.

100.     Consistent with Defendant's policies and practice, Plaintiff and the proposed FLSA Collective were not paid all overtime gap time and/or overtime compensation in workweeks during which they worked forty (40) hours or more, or close enough to forty (40) hours to have worked over forty (40) hours when considering the uncompensated off-the-clock time discussed herein.

101.     All of the work Plaintiff and the proposed FLSA Collective performed was assigned by Defendant, and/or Defendant was aware of all of the work Plaintiff and the proposed FLSA Collective performed.

102.     Defendant was aware, or should have been aware, that federal law required it to pay Plaintiff and the proposed FLSA Collective members for all hours worked and an overtime

premium for all hours worked in excess of forty (40) per workweek.

103.     As part of its regular business practices, Defendant intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the FLSA Collective members. This policy and pattern or practice included, but was not limited to:

      a. Willfully failing to pay its employees, including Plaintiff and the FLSA Collective members, for all overtime gap time and premium overtime wages for hours they worked off-the-clock up to and in excess of forty (40) hours per workweek; and

      b. Willfully failing to record all of the time that its employees, including Plaintiff and the FLSA Collective members, worked for Defendant's benefit.

104.     Defendant's unlawful conduct was (and is) widespread, repeated, and consistent.

105.     A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiff bring this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policies, or plans; and (d) their claims are based upon the same factual and legal theories.

106.     The employment relationships between Defendant and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay. The key issues are the same for every proposed FLSA Collective member, to wit: whether the FLSA Collective members were (1) required to work uncompensated boot-up and log-out time; and (2) entitled to their regular hourly wage, including a shift differential where applicable, in non-overtime workweeks, overtime gap time in applicable workweeks and overtime for hours worked over forty (40) in a week.

107.    Plaintiff estimates the FLSA Collective, including both current and former Representatives over the relevant period, includes hundreds, if not thousands, of members. The precise number should be readily available from a review of Defendant's personnel and payroll records.

108.    The FLSA Collective should be notified of this action and allowed to opt-in pursuant to pursuant to 29 U.S.C. § 216. Unless the Court promptly issues such a notice, the FLSA Collective members, who were lawfully deprived of pay in violation of the FLSA, will be unable to secure compensation to which they are entitled, and which has been unlawfully withheld from them by Defendant.

## RULE 23 NATIONWIDE CLASS ALLEGATIONS

109.    Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of herself and on behalf of:

> *All current and former similarly situated Representatives who work or have worked for Defendant during the applicable statutory period.*

(hereinafter referred to as the "Rule 23 Nationwide Class"). Plaintiff reserves the right to amend this definition if necessary.

110.    The members of the Rule 23 Nationwide Class are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical. Plaintiff reasonably estimates there are hundreds of Rule 23 Nationwide Class members. Rule 23 Nationwide Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

111.    There is a well-defined community of interests among the Rule 23 Nationwide Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nationwide Class. These common legal

20

and factual questions include, but are not limited to, the following:

     a.  Whether the pre-shift time Rule 23 Nationwide Class members spent on startup and login activities each shift is compensable time under applicable law;

     b.  Whether the mid-shift time Rule 23 Nationwide Class members spent on boot-up and login activities each shift is compensable time under applicable law;

     c.  Whether the post-shift time Rule 23 Nationwide Class members spent documenting calls and closing all programs, applications and networks is compensable time under applicable law;

     d.  Whether Defendant's non-payment of wages for all compensable time amounted to a breach of contract; and

     e.  Whether Defendant's non-payment of wages for all compensable time resulted in an unjust enrichment to Defendant.

112.    Plaintiff's claims are typical of those of the Rule 23 Nationwide Class in that she and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of the Defendant's payroll policies and practices. Plaintiff's claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 Nationwide Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

113.    Plaintiff will fully and adequately protect the interests of the Rule 23 Nationwide Class and Plaintiff retained counsel who are qualified and experienced in the prosecution of wage and hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

114.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, inter alia, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

115.    This case will be manageable as a Rule 23 Class action. Plaintiff and her counsel

know of no unusual difficulties in this case and Defendant has advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

116. Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

117. Because Defendant has acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## COUNT I
## FLSA COLLECTIVE ACTION
## VIOLATION OF THE FAIR LABOR STANDARDS ACT
## 29 U.S.C. § 201, *et seq.* – FAILURE TO PAY OVERTIME

118. Plaintiff re-alleges and incorporates all previous paragraphs herein.

119. At all times relevant to this action, Defendant was subject to the mandates of the FLSA, 29 U.S.C. § 201, *et seq*.

120. At all times relevant to this action, Defendant was engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

121. At all times to this action, Plaintiff and the FLSA Collective members were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

122. At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and the FLSA Collective members to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

22

123.     Plaintiff and other FLSA Collective members, by virtue of their job duties and activities actually performed, were all non-exempt employees.

124.     Plaintiff either: (1) engaged in commerce; (2) engaged in the production of goods for commerce; or (3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

125.     The FLSA requires an employer to pay employees for all hours worked and the federally mandated overtime premium rate of 1.5 times their regular rate of pay for every hour worked in excess of forty (40) hours per workweek. 29 U.S.C. § 207.

126.     The FLSA requires all employers to keep accurate payroll records and time records for at least three (3) years (including all basic timecards and daily starting/stopping times of individual employees). *See* 29 U.S.C. § 211(c); 29 C.F.R. 516.1, *et seq*.

127.     At all times relevant to this action, Defendant engaged in an unlawful policy and practice of requiring Plaintiff and all the FLSA Collective members to work off-the-clock, every shift, and failed to pay these employees: (a) their regular hourly rate for off-the-clock work performed in workweeks in which they worked more than forty (40) hours when such time is considered; and (b) the federally mandated overtime compensation for all off-the-clock work performed in excess of forty (40) hours per workweek.

128.     The off-the-clock work performed every shift by Plaintiff and the FLSA Collective was an essential part of their jobs and these activities, and the time associated with these activities was significant.

129.     In workweeks where Plaintiff and other FLSA Collective members worked forty (40) hours or more, or close enough to forty (40) hours to have worked over forty (40) hours when considering the uncompensated off-the-clock work time discussed herein, all of this overtime

23

should have been paid at the federally mandated rate of 1.5 times each employee's regular hourly wage, including a shift differential where applicable. 29 U.S.C. § 207. Further, all "gap time" should have been paid at Plaintiff and the FLSA Collective's regular hourly rate.

130.     As a result of Defendant's unlawful policies and practices, Plaintiff and the FLSA Collective members were deprived of both straight time and overtime wages in violation of the FLSA.

131.     At all relevant times, Defendant had a policy and practice of willfully refusing to pay Plaintiff and all putative FLSA Collective members the legally required amount of overtime compensation for all hours worked in excess of 40 hours per workweek, in violation of the FLSA.

132.     As a result of Defendant's willful failure to compensate Plaintiff and the putative FLSA Collective members at a rate not less than 1.5 times the regular rate of pay for work performed in excess of 40 hours in a workweek, Defendant violated and continues to violate the FLSA, 29 U.S.C. §§ 201, *et seq*., including but not limited to 29 U.S.C. §§207(a)(1), 215(a), and 29 C.F.R. §§778.104. Defendant's conduct as alleged herein constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

133.     Defendant could have easily accounted for and properly compensated Plaintiff and the proposed FLSA Collective members for all work activities, but did not.

134.     As a result of the foregoing, Plaintiff and all others were similarly situated are entitled to backpay as well as liquidated damages in an amount equal to their back pay. As a result of Defendant's FLSA violations, Plaintiff and all others similarly situated are owed overtime wages at a rate to be calculated by taking the difference between the overtime they should have received for each workweek and the overtime they did receive during the same time period. The exact amount can be readily determined using payroll and other employment records Defendant is

statutorily required to maintain under FLSA 29 U.S.C. § 211(c).

135.    Plaintiff and all others similarly situated are entitled to back pay, liquidated damages (double damages), interest, attorneys' fees and costs, and all other relief just and appropriate under the statute. 29 U.S.C. § 216(b)

<u>COUNT II</u>
<u>RULE 23 NATIONWIDE CLASS ACTION</u>
<u>BREACH OF CONTRACT</u>

136.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

137.    At all times relevant to this action, Defendant had a binding and valid contract with Plaintiff and every other Rule 23 Nationwide Class member to pay each employee for each hour they worked at a pre-established (contractual) regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed on behalf of Defendant.

138.    Evidence of these contracts include Defendant's letters offering employment, pay statements, and other documentary evidence in Defendant's possession. Additionally, Defendant made verbal offers for payment at a specified, above minimum wage for Representative work, which Plaintiff accepted and performed, but Defendant failed to perform by paying Plaintiff and the Rule 23 Nationwide Class the promised wages.

139.    For example, Defendant offered to compensate Plaintiff at a minimum of $17.00 per hour if she agreed to perform services for Defendant as a Representative. Plaintiff accepted Defendant's offer and performed her duties as a Representative in reliance on the offers.

140.    Defendant breached its contractual promises by failing to pay Representatives at their fixed, pre-agreed upon hourly rate for *all* of the hours worked.

141.    Upon information and belief, each Rule 23 Nationwide Class member, including Plaintiff, was contractually entitled to varying minimum hourly rates within the applicable period.

25

142.     Plaintiff and every other Rule 23 Nationwide Class member accepted the terms of Defendant's contractual promises contained in Defendant's offer letters, and performed under the contracts by doing their jobs and carrying out the work they performed each shift, which included the unpaid off-the-clock work that was required of them in connection with pre-, mid-, and post-shift work described herein.

143.     By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for all the work they performed each shift in connection with the off-the-clock work described herein, Defendant systematically breached its contracts with Plaintiff and each member of the Rule 23 Nationwide Class.

144.     Defendant can easily ascertain the amount of damages owed to Plaintiff and the Rule 23 Nationwide Class members based on the allegations made in this Complaint (specifically the amount of off-the-clock work claimed each shift) in conjunction with Defendant's payroll records, which will provide the number of shifts worked by each Rule 23 Nationwide Class member.

145.     Plaintiff and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them *more* than the federally mandated minimum wage of $7.25 per hour, but less than forty (40) hours per week (*i.e.*, pure "gap time" claims for non-overtime hours/workweeks).

146.     Defendant also breached its duty of good faith and fair dealing by failing to keep track of the time Plaintiff and other Rule 23 Nationwide Class members spent performing off-the-clock activities, which is a fundamental part of an "employer's job."

147.     As a direct and proximate result of Defendant's contractual breaches, Plaintiff and the Rule 23 Nationwide Class members were damaged in an amount to be determined at trial.

<u>**COUNT III**</u>
<u>**RULE 23 NATIONWIDE CLASS ACTION**</u>

## UNJUST ENRICHMENT/QUANTUM MERUIT

148.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

149.    This Count is pled in the alternative to Count II, *supra*, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

150.    At all times relevant to this action, Defendant promised Plaintiff and every other Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed for the benefit of Defendant.

151.    Plaintiff and every other Rule 23 Nationwide Class member relied upon Defendant's promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

152.    Throughout their employment, Plaintiff and the Rule 23 Nationwide Class worked up to, but sometimes not reaching or in excess of, forty (40) hours in a workweek.

153.    By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the off-the-clock work they performed each shift, Defendant was unjustly enriched.

154.    Plaintiff and the Rule 23 Nationwide Class members performed off-the-clock work tasks at the request of and without objection by Defendant.

155.    Defendant received and accepted the above-referenced off-the-clock work services from Plaintiff and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom.

156.    Upon information and belief, Defendant used the monies owed to Plaintiff and every other Rule 23 Nationwide Class member to finance its various business ventures or pay its

equity owners.

157.    Defendant was unjustly enriched by the retention of monies received pursuant to the services Plaintiff and the Rule 23 Nationwide Class performed for Defendant's benefit, without having compensated Plaintiff and the Rule 23 Nationwide Class for the same.

158.    Plaintiff and the Rule 23 Nationwide Class suffered detriment due to Defendant's failure to compensate them for the off-the-clock work described herein, in that Plaintiff and the Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

159.    As a direct and proximate result of Defendant's actions, Plaintiff and every other Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages.

## **RELIEF REQUESTED**

**WHEREFORE**, Plaintiff requests the following relief:

a.  An Order conditionally certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b.  An Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(3) with respect to Plaintiff's breach of contract claim and unjust enrichment claims (Count II and III);

c.  An Order compelling Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all FLSA Collective members and authorizing Plaintiff to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the Collective members of their right to join and participate in this lawsuit;

d.  An Order designating the Plaintiff as representative of the FLSA Collective and the Rule 23 Nationwide Class, and undersigned counsel as class counsel for the same;

e.  An Order declaring Defendant violated the FLSA and the Department of Labor's attendant regulations cited herein;

f.  An Order declaring Defendant's violations of the FLSA were willful;

g.  An Order declaring Defendant breached its contracts with Plaintiff and the members of the Rule 23 Nationwide Class (or, in the alternative, that Defendant was unjustly enriched) by failing to pay them for each hour they worked at a pre-established (contractual) regular hourly rate;

h.  An Order granting judgment in favor of Plaintiff and against Defendant and awarding Plaintiff, the FLSA Collective, and the Rule 23 Nationwide Class, the full amount of damages and penalty damages available by law;

i.  An Order awarding reasonable attorneys' fees and costs incurred by Plaintiff in prosecuting this action as provided by statute;

j.  An Order awarding pre- and post-judgment interest to Plaintiff on these damages; and

k.  An Order awarding such other and further relief as this Court deems appropriate.

Dated: January 29, 2026                     Respectfully Submitted,

                                            */s/ Ethan C. Goemann*

                                            Ethan C. Goemann (NC Bar #50731)
                                            Kevin J. Stoops (P64371)
                                            Kathryn E. Milz (IL 6297213)*
                                            SOMMERS SCHWARTZ, P.C.
                                            One Towne Square, 17th Floor
                                            Southfield, Michigan 48076
                                            Telephone: 248-355-0300

                                            kstoops@sommerspc.com
                                            kmilz@sommerspc.com

                                            *Attorneys for Plaintiff and the Putative
                                            Collective/Class Members*

                                            *(pro hac vice application forthcoming)*

29

## DEMAND FOR JURY TRIAL

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this Complaint that are so triable as a matter of right.

Dated: January 29, 2026

Respectfully Submitted,

*/s/ Ethan C. Goemann*

Ethan C. Goemann (NC Bar #50731)
Kevin J. Stoops (P64371)*
Kathryn E. Milz (IL Bar #6297213)*
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
Telephone: 248-355-0300
kstoops@sommerspc.com
egoemann@sommerspc.com
kmilz@sommerspc.com

*Attorneys for Plaintiff and the Putative Collective/Class Members*

*\*(pro hac vice application forthcoming)*

30